Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and this honorable court. Good afternoon everyone. This is the third day in our December sitting by Zoom. We'll go ahead and call the first case 19-30763 Bennett v. McDermott International and we'll first hear from appellants counsel. Mr. Milconian, whenever you're ready. Thank you, your honor, and may it please the court. The plaintiffs in this case are required to ride buses to the Cameron Parish liquefaction project for hours each day because of a government mandate. They allege that sometimes they have to participate in work activities on the trip and they have to arrive at the bus station hours early to make the bus. They're not paid for any of that time. To the contrary, if they don't use the mass transit facility, they can't be paid for that day. We think that in these narrow circumstances, and these are narrow circumstances, we are not trying to open the floodgates to this kind of litigation as our friends on the other side would like this court to believe. We think that in those circumstances allegations that there is a governmental mandate of a mass transit system in order to do the principal activity of construction, at least at the Rule 12b6 stage, is permissible, is compensable under the Portal to Portal Act under this court's precedent and that of the Supreme Court. So let me start with the FLSA claim and I have a few points to make to the court. First, neither the Portal to Portal Act nor any of the cases that the defendants cite are dispositive. If you look at the cases that the defendants cite, whether it's the 11th Circuit's decision in Bonilla or Allegheny from the 3rd Circuit or the 10th Circuit's decision in Aztec, that's Judge Michael McConnell's opinion, or even this court's decision in Griffin or what I think is the controlling opinion in this court, which is Vega back from 1994, none of those say there is a per se rule that mandatory or governmentally required mass transit programs are not compensable. Mr. Mulcahyan, how necessary was the bus system for FERC approval? I guess I have two answers to that, Your Honor. First, from our allegations and from what I understand of the facts, it is absolutely necessary. You know, what we allege is that this project would not happen without the mass transit program required by FERC. And the reason for that... Without FERC approval, I mean, but for FERC approval, this wouldn't exist. I mean... That's our allegation. But for this mandatory bus system, the FERC approval never would have happened. That's our allegation, Your Honor. Now, I think my friends on the other side are going to disagree with that factually, but, you know, that's something, of course, for summary judgment to be dealt with. Our allegation and what I believe is that it was required for FERC approval. And let me give you a little bit, a 30-second sort of understanding of why that is so, at least why I understand it to be so. Cameron Parish is a relatively rural parish. There is one highway out of it. That's in our complaint, by the way. It's I-27. It's a two-lane highway coming out of it. And it's also susceptible to hurricanes. So I think FERC's concern and what they say in the document, the serious environmental concern, is that a hurricane hits and there are 10,000 cars at the facility and you have chaos as people try to escape Cameron Parish. And in order to protect the people of Cameron Parish and indeed the workers, they imposed what they call, not I call, a mass transportation system. So I think it is absolutely necessary, at least as alleged at the 12B6 stage, to this facility. So what I've said so far is that there's no case that precludes what we want to have happen. And indeed- Let me ask you, Mr. Marconi. You say there's no case that precludes it. Is there a case that supports it? In other words, is there a case that says, assuming you're right that it's required by FERC, you know, there's that debate, but let's- It was absolutely required. Let's assume that. What's your authority that says that then makes it compensable? The fact that it's a regulatory requirement? Well, so I don't have a direct commuting time case that says that. And I think that's clear from our briefs and from what the arguments that we've made. What I would is that this is a lot like Steiner, even though that's not a commuting time case, of course. But that's the case where workers are required to bathe before and after they go and work with toxic chemicals from 1956. And the court held that that was integral and indispensable to the principal activity involved there. And I would say this is similar because there is a regulatory mandate on the defendants, and they are trying to push that regulatory burden onto the plaintiffs without pay. And it's a regulatory mandate that protects them and protects the citizens of Cameron Parish. And so I think that's my best analogy, or at least the strongest case. I admit that I, you know, totally candidly, I do not have a case that directly says we went on My point is that they don't either. And the way that this case has been litigated is that somehow Griffin or even Vega are dispositive of the issues on appeal. And that simply isn't true. Well, let me ask you, then, if there's no case either way, sort of as a policy question. We know the Supreme Court has said in these recent cases that, you know, just that if something benefits the company, it makes it more convenient. It makes it more profitable. That that doesn't entitle the workers to compensation. So if even just pure benefit to the company doesn't entitle them to compensation, why would this regulation? I mean, it's not it's why wouldn't that just why would that have to be require compensation? Wouldn't require compensation just that it helps the company's self interest? Well, I know your honor asked about it as a policy matter. But let me turn back to a case, you know, in in bus or integrity staffing solutions, Justice Thomas said that it's compensable if it's both indispensable and integral to the system. And so I would say it's both of those in a way that something that's purely for the benefit of the defendant is not. So it's indispensable, as I was saying earlier, in the sense that you can't have this factory without it. And I think I have a pretty good argument on that. With respect to integral, you know, is it central to the work that we're doing here? And I would point to two indicia that make it particularly integral from the way I understand the facts and the way we have alleged them. One, you're dealing with a situation where the workers are being asked to do up to four hours of work a day in this commuting system. In other words, they have about a two hour commute. And there's also this two hours of mandatory wait time without which they can't get on the buses. And if you're dealing with a situation where a third of the workday is consumed by what is supposedly sort of a subsidiary requirement or, you know, a requirement for the benefit of the defendants, I don't think that makes sense. I think that's much closer to an integral part of the work that the people are being hired for. The other indicia... What you said about BUSC, I believe the opinion said that we shouldn't focus on whether an employer is required a particular activity, but the integral and indispensable test is tied to the productive work that the employee is employed to perform. That's a quote from that case. How does this affect the work that the employees here are required to perform? I think that this work is integral and indispensable to the construction work, which is the principal work that the employees are being asked to perform. Because if they don't do this work, the construction work that they are being hired to do cannot happen. There will be no construction of a liquefaction facility at the Cameron Parish location without doing this for the defendants. Is it integral to the work, yet also disconnected from the work? Are you asking me, is it both integral and disconnected? I didn't hear all of it. Okay. Well, it's... I would say it's, you know, there's some space between it and the work. I acknowledge that. But it's indispensable in the sense that you can't do without it. And I think it's because of the amount of time it takes up and because of the fact that the employees lose wages if they don't do it. That's another reason why it is integral and indispensable to the work that they're being asked to perform. Judge Weiner, I think I may have spoken over to you. I apologize. Go ahead. No, that's okay. Let's... I was going to ask a different question here. That is, what effect does the ECFA, I guess, is ECFA play here? Is the commute time outside the normal commute time and whether it's subject to an agreement? I have come to the conclusion, Your Honor, that ECFA doesn't have a lot of effect on this case, even though we initially cited it in our appellant's brief. In preparing for this argument, I think that it doesn't do anything to the way the integral and indispensable test works here. So, I don't think it's dispositive in either direction. Mr. Malconian, when you opened, you flagged... You really stressed the narrowness of this case. You were sensitive to opening floodgates. With that in mind, how would you wordsmith a holding with a bright line limiting principle? Yes, Your Honor. Let me answer that in two ways as well, if I can. One is, I think our friends on the other side should face the same question, because if they're right, then I don't know what the limiting principle is that keeps even... and then flown back to Cameron Parish in order to do the work. Would that still be non-compensable under their theory? So, I think they face the same problem. But to directly answer Your Honor's question, I think that one, it's pretty fact intensive. And so, in most cases, you've got to look at each fact. And I think when you put together the sort of conflation of facts that have here. So, we have a governmental mandate without which the work can't happen. It's not de minimis, which happens in a lot of these cases. I do want to make that distinction between this and the other cases. A lot of those other situations are where the commuting program is just a last mile kind of situation. The workers would have done that trip anyway. Here, we have a situation where the workers are being pulled out of their parish, because most of them live in Cameron Parish, and then being bused right back in. And their commute time is essentially doubled because of that. So, I would say that a delta between the normal commute time and the commute time required by the mass transit program is important. But I mean, ultimately, the biggest point I have is that this is a governmentally required mandated thing that the work program. There's another issue there that we should probably discuss, is the question of whether there is work being done on the buses as they go from the bus station to the facility. And that really comes into our argument about the motion for leave to amend. Now, I know in most cases, motions for leave to amend fall astray on sort of the shoals of you know, or the Court of Appeals says any amendment would be futile. So, you know, what are we doing here? But here, it's not, because we have a companion case in the Western District of Louisiana that came after ours. They had the benefit of looking at our case and seeing what happened. And there, the plaintiffs alleged that there was substantial work happening on the granted leave to amend, consistent, of course, with our Rule 11 obligations to make sure that our allegations comply with what our clients are telling us, make those allegations and leave to amend would not be futile. Because that case is going forward, there is not a motion to dismiss, as I understand it, and that discovery is proceeding there against the very same defendants. So I think that's an important point. Counsel, in response to Judge Willett's question about the limiting principle, you cited a number of facts, foremost, the regulatory requirement. But you also said that here, this made for a longer commute for many workers, because maybe they were actually closer to the plant, they had to backtrack to this bus stop. But would your argument be that someone's entitled to be compensated, even if this really, this was a worker who, the bus stop was on the way, so it really wasn't much of a delay, other than maybe the waiting time for the bus? Right. I think at some point, it would run into a de minimis exception. So like, if it was a 15 minute trip, then I don't know that we have a very good argument, even if it was central otherwise, because of the regulatory overlay. So I think there, we might have a problem. But let's say it was a two hour trip that the worker would nonetheless be making, but it was central in all the same ways. I would probably say that ought to come out the same way as we're advocating here. All right. Thank you, counsel. Time for rebuttal. We'll now hear first for McDermott's counsel, Mr. Ungar. Thank you, your honor. Good afternoon. Hal Ungar from McDermott International Inc., CB&I, LLC, and Scioto International Corporation. May it please the court. I wanted to start by addressing some of the questions that your honor asked my opposing counsel. And Judge Costa, I think you asked my counsel if there was any case supporting his position or contrary to his position, because I think he was arguing that there is no case really supporting his, committed that there is no case supporting his argument here, was that because some regulatory body placed, arguably placed a requirement, as they allege it, that it converts otherwise non-compensable travel time to travel, to compensable time. And we saw the Cameron side of the case, the Bonilla case, which is Bonilla versus Baker concrete from the 11th Circuit, which I think is about as close as we can get to it. This was a case that was decided pre-busk, but the standard for compensability for the employees was more favorable to employees pre-busk. And so in this circumstance, employees were hired to build a runway or work on a tarmac in an airport. And FAA has regulatory authority over construction of airports. And there's an FAA regulation that provides that you cannot travel with your airplane. And I'm not an airport person, but it seems like probably safety concerns, obvious reasons for that. So those employees pursuant to the regulation were obligated to park somewhere else and shuttle. An employer provided shuttles to where they were going to perform what was ultimately their principal activity, which was building the airport. And the court there concluded that even though the employer required it, and this was in a world where the employer benefit was actually something the courts were considering, nonetheless, that time was not compensable because it was contrary to the intent of the Portal to Portal Act and the DOL CFRs that interpret it, including 29 CFR 790.7 subpart GF, which was the section on which the 11th Circuit relied, and this circuit relied in the Griffin case to conclude that mandatory busing is not compensable. So there's nothing really different in our case from that case, and that's about the closest that I could find. Federal agency says federal agency's rules provide that the employer has to provide some other way for employees to get to the ultimate place where they need to work, and the court found in favor of the employer in that circumstance that it wasn't compensable. Judge Weiner, I wanted to return to a question that you asked as well about the focus on the integral and indispensable nature of the work being performed. I want to emphasize something here, and I believe I heard my opposing counsel say this in the beginning. To be clear, there's no allegation in this case that any work was performed on the buses. None. In footnote three of the plaintiff's reply brief, they say that everybody agrees that construction work was not being performed on the buses. Yeah, but isn't it true that the requirement that they not drive and park in the vicinity of the construction a recognition that the work they will do once they arrive is indispensable? I think that's in line with integrity staffing, Your Honor. The work that they're doing when they arrive is the work that's indispensable. That's the work that's integral. That's the work that is their principal activity that they're supposed to be compensated for. I think that's true. The focus here is on what the employees were hired to do. Let me speak for a second about FERC, because Judge Willard asked about whether or not the order required it. A little bit about how the order came to be. Because this is a liquefaction project, the regulatory body had authority to approve it. It involves waterways and environment and gases. One of the issues was all these people who don't live in Cameron were already going to be traveling from Texas, from other parts of Louisiana to come work on this project. The government said, we don't want you to build a 100-acre parking lot here that you're ultimately going to destroy. You have to come up with something else to do, which makes sense. I guess that could be similar to the government telling people where they need to park when they're building highways, or local governments telling people where they need to park when they're building bridges. You go and they say, what you're proposing to us isn't sufficient. Propose something else. The employer decided to implement a mandatory busing system, which was the employer's recommendation, which the government ultimately accepted. It's not technically correct that the government said, you must do busing. The actual circumstance was that the employers proposed busing, which really is no different than the Griffin case, which was employer mandatory busing. This also was pre-busk, which means the burden for the plaintiffs was better for them. In that case, petrochemical employees were required to write a mandatory busing system. This court concluded, similar to how it concluded in the Vega case in 1994, that that type of transportation time is not compensable because it falls squarely within the Portable Portal Act. What the plaintiffs are asking this court to do now is to depart from what Congress's intent was in 1947, to make sure a few years after it passed the FOSA to preclude liability in circumstances like this, where people are just traveling to work. If getting to the job site was integral and indispensable, then the Portable Portal Act would have no meaning or honors. Everybody has to get to work. And so the employer in this circumstance could have proposed whatever it wanted. It could have said, I don't know if the government would have approved it, but it could have said, you guys just need to get here. You can't park here, but you need to get here because everybody needs to get to work. And we know under the Portable Portal Act that just ordinary getting to work isn't compensable. So if McDermott and CB&I came back and said, you guys just need to get here. There's no busing system. They show up. We're naturally not providing the benefit of the employees. And none of that time is compensable. And there's probably very little my opponent could say about that. Let me ask you about another industry that's in the same part of Louisiana, the offshore industry. Sure. You know, people go to a helicopter base. The helicopter takes those workers out into the Gulf. It can be a pretty long ride. Is that integral and indispensable, taking a chopper out to the Gulf? No, it's not, because you're just getting to the place that performing the principal activity, which is building the oil rig or working on the welding or working in the tank. It's actually really interesting that you ask that as an example. In that situation, it's somewhat similar to this. It's the only way to get there, basically. I mean, unless you're going to take a boat out there or something. Right. So, yeah, it is the only way to get there. I think that there's a couple of things that make it a little bit different in this case than the helicopter. So there was a man camp in this case where employees were living a mile from the facility. They probably could have walked if they wanted to, but I don't think why they would choose that. That bus ride was a minute. So the idea is that people were departing for several hours in other directions certainly wasn't applicable to everybody. On top of that. Although, excuse me, otherwise, it's the same. They are traveling from where they are living to where they are going to be working. And under the Portal to Portal Act, when you're traveling and you're not performing the job. And again, the plaintiffs can see they're not performing the construction work on the buses and they didn't allege it. That time just isn't compensable. There's just not a case that says anywhere in the country. I wanted to speak briefly about the other issue on appeal, which is the Louisiana Penalty Wage Statute, just so that I did not miss that. And then I wanted to speak about leaves to amend the plaintiffs seek assert a claim under the Louisiana Wage Payment Act, which is a statute that says that you are entitled to receive money if you were terminated from employment or employment situation ends under the terms and conditions of employment. And the law requires in order in order to establish, I'm sorry, there was a bit of an echo. In order to establish entitlement to that portion, to that money, you have to prove that there was a contract or practice in place to pay the money. The plaintiffs in this case alleged about 40 times that they were never paid for riding on the buses. They alleged about 40 times that they were never paid for waiting to go to work. So they cannot really come in now and allege that they were the opposite. That would be, I would like to think that they can't change what they've said 40 times in their lawsuit. There certainly was no employment contract in this case. The claims that are dependent on the FLSA. And when the claims is platter dependent on the FLSA and the employers engaged in interstate commerce, they're preempted. But the preemption issue isn't why the plaintiffs should lose that claim nonetheless. And the court should affirm the district court's dismissal. That's because they just can't plead it and didn't plead it. Because there was no contract promising people to be paid for bus ride and waiting time. And there was no payment for bus rides for waiting time. The purpose of the LWPA is to pay people the money they would have received had they stayed employed. And these people plead over and over and over again that they weren't paid for that. So the LWPA claim just simply isn't viable on its face with or without the preemption. Lastly, I wanted to speak about leave of court, your honors. And I wanted to take a moment to just discuss the procedural history in this case because I think it's important. And I think it can underscore why the district court denied leave. The first time any of the defendants in this case have heard what an amended pleading would say was 10 minutes ago when my opposing counsel mentioned it. There were four motions to dismiss filed in this case, after the plaintiffs filed their first amended complaint, and they never amended it thereafter. The claims in this lawsuit were that all the defendants were employers, that these plaintiffs were owed a minimum wage for time riding the bus and waiting to get on the bus, even though they were making $35 to $40 an hour, whereby if they worked every minute of every hour of every day of every week of the year, they'd still be making close to $15 an hour. All of the defendants in this case filed motions to dismiss, arguing to the plaintiffs that these claims are not viable. And the plaintiffs dug in, and they opposed all of them. And in none of those oppositions did they say to the district court what it is they would say in their pleadings to save them. Instead, they kind of crossed their arms and said, this is correct. These are our claims. This is viable under the law of this circuit. And the district judge rejected that. You know, I've done something in this case that I've never done before, and my colleagues and I have never done before on this case. And I served a Rule 11 letter and filed the motion. And we served the Rule 11 letter on the same day that we filed our motion to dismiss the first one. And McDermott and CB&I were the last two defendants to do that. So those were the third and fourth entities to do it. And we filed it. We served it on them on that same day. And then we waited 60 days. And during those 60 days, the plaintiffs dug in. They opposed all of those motions. They moved to certify a Rule 23 class, which the definition itself is dependent on the FLSA. They moved to conditionally collectively certify their FLSA claims. So they were made it very clear that they weren't abandoning anything. So we filed the motion too. And not one, in response to any of those six times that the plaintiffs had an opportunity to amend of right, did they even do so or ask permission to do so or explain to anybody on the district court level what it is they would say. Mr. Unger, we're at a pretty early stage of the litigation here. And I wonder why wouldn't a bit of discovery help the district court make a more fleshed out, more informed decision on how integral and indispensable all this was? No discovery that would occur in this case, Your Honor, that would save that claim. The plaintiff's focus is that there is an order from the federal government that requires of requires the busing, which is just, first of all, not accurate. But there's no case in the country that supports that that changes what is otherwise compensable time to compensable. And there's no discovery required to do it. They made this argument in the district court. The district court rejected it, rightly, because there's no case law supporting it. And so it's plaintiff's burden to plausibly breathe their claim at the Rule 12 stage. And because they failed to do so, the court concluded that it should be dismissed. And the court articulated under the standards for leave of court why it is that it wasn't going to grant leave. The court said, you didn't tell me what the amendment was going to say at all. The court said plaintiffs persisted in inserting overturned law, ignoring the holding of integrity staffing and trying to apply California state law to these federal court. You forgive me for butting in. We got about 20 seconds. I want to circle back to something. I heard you use the word arguable or arguably earlier when we were talking about how necessary the bus system was for FERC approval. Can you explain what you meant by that? Sure. Yes. So when and I see my time is up. And so if it's OK, Judge Willard, I'll answer this and I'll stop. Is that OK with you? Judge Costa, forgive me. Of course. Thank you, Judge. It's going to take a couple of minutes. It's fine. Thank you. So the FERC process was these companies and to figure out a way in which the federal government would approve the project. And so the initial proposal, the idea, which would be easier for everybody, is to allow people to park on site. But that was going to require major construction. And so the federal government said, you can't do that. Propose something else. And so the result of that proposal was the busing system was the company deciding to recommend the busing system. The company could have proposed other things. I don't want to speculate what would have happened if the company proposed other things, but I think the company could have said our employees are going to show up on site and you guys need to be dropped off or you guys need to be dropped off down the street and we're going to build a sidewalk that lets you walk down. The point of all that is that the government didn't say you must bust that. It was the company's coming up a proposal when the government says we don't like what you proposed first. So I think that's the distinction. All right. Thank you. We'll now hear from Ms. Kilgore. Thank you, your honors. Good afternoon. May it please the court. Erin Luckwitty, Kilgore on behalf of Cameron LNG, LLC. Cameron LNG should never have been in this case. We did not employ the appellants and we weren't a joint employer of the appellants. But nevertheless, the district court was correct in dismissing with prejudice their claims under the Fair Labor Standards Act and the Louisiana Wage Payment Act. And I certainly don't want to duplicate the arguments that have already been provided by Mr. Unger. But there are a couple of points that I did want to circle back to, to respond to some of the questions that were posed to appellants counsel. For example, he cited the Steiner case, which is a pretty old Louisiana, I mean, United States Supreme Court case for the proposition that a state's statute there, the Tennessee law, somehow made the non-compensable time otherwise compensable. And that case is distinguishable. We also note that it is before the Busk case provided clarity from the Supreme Court regarding the test for integral and indispensable time. And nothing in Steiner would show that the time would have been non-compensable as is the case here, but for the Tennessee law that required that battery plant employees spent removing toxic chemicals was integral and indispensable part of their activity working with those toxic chemicals. It's a very different situation than what we have here, where that is the fact of a government mandate, even taking their allegations is true regarding the impact of that mandate. That is the only thing that they're citing to show that the time is integral and indispensable, but it doesn't meet the, under the Supreme Court's clarified definitions in the Busk case. We would also dispute their allegations with, and again, I know at the 12B6 stage, we must accept their allegations. It's true, but because it was asked at various points in this argument this afternoon, what the, you know, what the consequence of the busing system was, where the FERC permit was to the plant's overall, to the facility's overall construction, you know, it's gross hyperbole to argue that there would have been no construction at all of the facility, but for that traffic system. You know, one could pose many hypotheticals of what potentially could have happened if these employees did not ride on the buses. They still could have gotten to the site. They may have been disciplined by their employers if they did so, but that doesn't mean that they couldn't perform their principal activities of welders and pipe fitters had they arrived at the plant another way, at the facility another way. Even within the FERC permit itself, in the traffic plan that was approved by FERC, there were provisions in place for some individuals to arrive at the site and park on the site. Again, I know that that's getting into facts that are different from those alleged, but here they can't allege facts that are different than reality. Let's, you know, and then with respect to, you know, I also want to point out that Justina Mayor in her current concurring opinion in the Integrity Staffing Solutions versus BUSC case made a, made a pretty clear, her reasoning was pretty clear and helpful in the context of this case regarding activities that are integral and indispensable to the principal activities and those that are not. She found that the test distinguishes between activities that are essentially part of the ingress and egress process and activities that constitute the actual work of consequence performed for an employer on the other hand. In that case, the security screenings at issue in BUSC were part of the ingress and egress process and not part of the principal activities, and the commute time here is the exact same thing. That clearly is part of the ingress and egress process. It's not part of their activities that they performed as welders and pipe fitters. In the Bonilla case that Mr. Unger discussed as really being the only case that would support or that really addressed a federal regulation, the judges in that case also noted that the FAA regulation that impacted the travel in that case, the FAA regulations and the screening and the commute that was implemented by the employers at the FAA's construction, that was necessary for the employees to perform their jobs at performing construction work at the airport. They needed to go through that screening process, but just because it was necessary did not mean it was integral and indispensable, because even under the standard at that time, integral and indispensable was not a but for causal necessity, which is what the plaintiffs have been arguing here. But for the traffic plan, there would have been no facility, and that's just simply not the test. And earlier, another question that was posed to appellants' attorneys that I also wanted to circle back to and address is what the holding would look like if the judges agreed with our we believe is in line with the Supreme Court precedent and this court's own jurisprudence. If the court agreed with us, there would be no need to draw any sort of a specific delineation with respect to a government-mandated permit system. We simply apply the BUSC test, and we simply apply the definitions of what is an integral and indispensable activity. The plaintiffs have already admitted that they performed no work on the bus. They performed no construction work. The fact that there may be another case where different plaintiffs made different allegations that these plaintiffs have never raised until, I guess, at this point we're 20 minutes in, you know, that doesn't mean anything to our plaintiffs who already said that they didn't perform any work. And for them to make a contrary position at this point in time would be futile and doesn't support giving them an opportunity to amend when they've had almost two years since they filed this suit to tell us, the court, or even your honors what they would do if they were given an opportunity to amend. All right, thank you, counsel. Mr. Melconian, you get the last word. And you don't have to start off with this, but if at some point in your few minutes you could address this Bonilla case that opposing counsel said did involve a regulation. Yes, if you don't mind if I could do that second, because I want to get to the leave to amend situation first. With respect to that, what our friends on the other side are saying is that we've never made this allegation about working in the bus. That's wrong. It's those allegations in line with what was done in the other Western District of Louisiana case. But it is in our complaint as it is in the First Amendment complaint. What would you make more extensive? What would the details be? Yes, your honor. The other allegations in the other case, and we believe we could make these same allegations if given the opportunity, say that most of the time there is serious work going on in these buses. There's instructions about what to do at the facility, what we're going to be doing today, what kind of construction we're working on. All those kind of things that the supervisors take control of their teams on these buses. And again, I didn't hear otherwise in my friend's presentation. They did not move to dismiss those claims. And, you know, discovery is proceeding in the same facility, same defendants. And it's exactly everything's exactly the same, your honor, except for the extent of the allegations about the busing. As far as I know, if they think otherwise. I mean, let me ask this then, if FLSA is an opt-in case, why do you need this case to go back down if it's just for leave to amend when there's this other case that anyone can join? I mean, other than I get different plaintiffs attorneys want to control different cases, but if there's a parallel case that any worker can join, it seems a little inefficient. Well, your honor, I'm not. My problem with answering that question is I haven't thought about what happens to the people that are in this case. If that's true, I suspect there would be some kind of preclusion or something like that. And that would be a concern for me. So I think that would be my answer. But I don't want to misrepresent what I know about the law there because I don't know the exact answer. The other thing I want to say is Mr. Unger's presentation went through this sort of procedural world of things that supposedly happened that were incorrect during the motion to dismiss process. I have to say that happens all the time in federal litigation. I represent clients on both sides of this. There is nothing unusual about the plaintiff saying, look, we think our allegations are sufficient and we're going to see what the district judge thinks, but we're also asking for leave to amend. And that happens all the time in motions to dismiss. And this court all the time says that that is sufficient, even when there is not a proposed amended complaint. So I think that that presentation there that we heard sort of infected the district court's normal process in trying to understand how to grant leave to amend, which of course normally is freely granted. I think what was the cause for not including it earlier in the original complaint? I mean, a lot of times pleadings, the problem is, oh, this is within the knowledge of the defendant. We don't really know at this stage and that's a predicament for plaintiff's lawyers. Here, I mean, the plaintiffs are going to know what's done on these buses they take every day they go to work. So why, if there are all these additional allegations, why did it take so long to present them to the court? Your Honor, I don't have personal knowledge of why that's so, but what I would say is sometimes there's an iterative process in complaints where you make what you think are your best allegations. And then as the case develops, you change that and amplify other ... is the normal kind of process that happens. Of course, ideally sitting now, of course, we'd love to have made those allegations too, more extensively than they're already in the complaint. Let me address Bonilla. That is the closest case the other side has. And what I would say is that the time involved in that case, it's first of all, the argument about indispensability was not made as far as I can tell. So if you read that case, you're not going to see an argument that this federal regulation requires compensability. But even if somehow the argument were made, I would say the time involved in Bonilla is quite different. We're talking about a quite short bus ride. And I think that that would distinguish this case from that one. The other point to make, of course, is that Bonilla is not binding on this court. So this court could go in a different direction than Bonilla in any event. A couple other points with the 10 seconds I have left. Someone mentioned a man camp near the facility. That's not in the pleadings. It's not in the record. And I think that is good enough for now. Thank you very much, Your Honors. Good afternoon. All right. Thanks to everyone. Helpful arguments from both sides. We will issue an opinion in due course, and you all are excused from the Zoom. Thank you.